UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERENCE K. BETHEA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. Action No. 13-2021 (RMC) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM OPINION

A jury in the Superior Court of the District of Columbia convicted petitioner Terence K. Bethea of six counts of an eight-count indictment arising from a stabbing incident. Mr. Bethea was sentenced in October 2010 to an aggregate prison term of 144 months followed by five years' supervised release. His convictions were affirmed on direct appeal. In the instant petition for habeas relief under 28 U.S.C. § 2254, Mr. Bethea claims that his appellate counsel rendered ineffective assistance, in violation of the Sixth Amendment to the U.S. Constitution. The United States has opposed the petition [Dkt. # 13], and Mr. Bethea has replied [Dkt. ## 17, 20, 23]. Upon consideration of the parties' submissions and the entire record, and for the reasons explained below, the Court finds no grounds for issuing the writ.

I.  BACKGROUND

The trial transcript [Dkt. # 24] establishes the following relevant facts. On July 30, 2009, during an encounter at a Shell gas station in the District's northeast quadrant, Mr. Bethea stabbed Anthony "Tony" Morris in the face and head five times. Mr. Morris had been drinking beer when he decided to bike to the gas station to buy cigarettes. Upon seeing Mr. Bethea walking toward the gas station, Mr. Morris approached him to collect a $30 drug debt

Mr. Bethea owed Mr. Morris's nephew, D.J. Mr. Bethea told Mr. Morris that he would pay the nephew when he received the money. Mr. Morris considered taking further action but decided against it to stay out of trouble. A "few seconds" later, Mr. Bethea "cut" Mr. Morris. (May 20, 2010 Tr. at 67 [Dkt. # 24-15].) Mr. Morris felt a "big cut" across his face, and his "blood was, like, shooting out." (*Id*. at 68.) He later learned at the hospital that he was stabbed five times. (*Id*. at 70.)

Romaine Swinson, who was in a relationship with Mr. Bethea and lived with him at the time of the incident, was visiting a neighbor's house when she heard Mr. Bethea arguing with someone. When Ms. Swinson arrived at the gas station, she saw Mr. Bethea arguing with Mr. Morris. Ms. Swinson attempted to intervene in order to avoid an "altercation" and to convince Mr. Bethea to go home. (*Id*. at 168.) Ms. Swinson stood between the two men, but Mr. Bethea "pushed" her to the ground where she remained until the police arrived. (*Id*. at 169.)

Officer Phokham Vongkeo of the Metropolitan Police Department (MPD) was on routine patrol when he saw Mr. Bethea swinging at Mr. Morris. Officer Vongkeo did not see a weapon but noticed that no one else was near Mr. Morris. When someone yelled out police, Mr. Bethea "started to turn and walk away." (May 20 Tr. at 120.) Officer Vongkeo followed Mr. Bethea and told him multiple times to stop so that they could talk. Eventually, Officer Vongkeo caught up with Mr. Bethea near the driveway of a house south of the gas station, took him back to the gas station, and saw that Mr. Morris was bleeding "profusely" from his mouth. (*Id*. at 125.) As Mr. Bethea was being handcuffed, Mr. Morris identified Mr. Bethea as the individual who had stabbed him.

MPD Officer Christopher Henry arrived at the scene and saw Mr. Morris "sitting in a pool . . . of his own blood . . . covering his face, just kind of hunched over." (May 20 Tr. at

2

221.) Mr. Morris answered "Terrance" when Officer Henry asked who had done that to him. (*Id*.)

MPD Investigator William Talbert arrived at the crime scene, opened the rear door of the police car where Mr. Bethea sat, and saw blood splatter on the left side of Mr. Bethea's shirt. Mr. Bethea was taken to MPD's Fifth District Headquarters and held in an unsupervised cell block. Mr. Talbert noticed later at the police station that Mr. Bethea had turned his shirt inside out. At Mr. Talbert's direction, Mr. Bethea's clothing was seized. Based on the results of DNA testing, Mr. Bethea stipulated that the blood on his shirt and pants was that of Mr. Morris. (May 20 Tr. at 234-35.)

After other officers at the crime scene secured Mr. Bethea, Officer Vongkeo, armed with a flashlight, searched for a weapon by "tracking from where the incident occurred toward where [Mr. Bethea] was walking[.]" (May 20 Tr. at 127.) Officer Vongkeo saw a knife near the driveway of the house, in "the same spot" where he had stopped Mr. Bethea. (*Id*. at 130.) Ms. Swinson testified that the knife "look[ed] like" one of Mr. Bethea's knives that he kept in a tool box, but she could not positively identify it as the same knife. (*Id*. at 173.) Based on the results of DNA testing, Mr. Bethea stipulated that the blood on the blade of the knife was that of Mr. Morris.

Mr. Morris was taken by ambulance from the crime scene to Washington Hospital Center. Medical testimony established that Mr. Morris sustained a laceration to his face that was 15 centimeters long and tore through his facial muscle and nerves, a laceration to his ear that punctured his salivary gland, and a laceration over his left eye where the knife penetrated his skull.

Mr. Bethea was indicted on September 30, 2009, for assault with intent to kill

while armed (count one); aggravated assault while armed (count two); malicious disfigurement while armed (count three); assault with significant bodily injury (count four); and carrying a dangerous weapon (count five).

In October 2009, while incarcerated awaiting trial, Mr. Bethea sent Ms. Swinson letters on three separate occasions, seeking her assistance with securing witnesses to testify that Mr. Morris was cut during an altercation with a group of "youngens," and that he had tried to break up the altercation. (May 20 Tr. at 176-87). In exchange for the testimony, Mr. Bethea promised to pay each witness $40, and he promised Ms. Swinson a cell phone. Those letters resulted in the government's filing of a superseding indictment on December 2, 2009, adding three counts of obstructing justice.

During his testimony at trial, Mr. Bethea denied stabbing or cutting Mr. Morris, and he denied having "the knife that the police found outside." (May 24, 2014 Tr. at 36-37 [Dkt. # 24-16].) Mr. Bethea admitted that he and Ms. Swinson used marijuana and crack cocaine, and that he had assumed Ms. Swinson's drug debt owed D.J.. (*Id*. at 42-3.) Mr. Bethea also admitted that he had discussed the debt with Mr. Morris, but he described Mr. Morris as "drunk out of his head . . . really hot, . . . mad, and . . . just mean." (*Id*. at 52-3.) While Mr. Morris was threatening and insisting on payment, Mr. Bethea "stood there and told [Mr. Morris] to go ahead." Ms. Swinson then "jumped in the middle . . . and put [in] her two cent[s]," telling Mr. Morris that they did not have the money. (*Id.* at 54.) A group "of 15 to 20 people" gathered in the parking lot. (*Id*. at 55.) Mr. Bethea testified:

> [I]t was more or less a mele [sic] out there. Everyone was getting real antsy out there. It was getting real crowded. I knew something was going to go down. You know, you could tell by the way the little youngins out there were running each other and, you know, all those little Smokey boys. We knew something was going to go down. And

4

> as they started pushing up, I'm telling Tony, I'm going, man, you need to go ahead. You know, go ahead, Tony. I gotcha, man. Go ahead. I'll get you tomorrow, you know. He wasn't trying to hear it, and the boys started saying, man, get out of here, you know, go ahead. And they started cussing him out as well. So one thing led to another. It got hot. I pushed Romaine out the way and jumped out the way myself. They started getting at him.

(May 24 Tr. at 57.) Mr. Bethea testified that he knew who swung at Mr. Morris but did not know anyone by name. Mr. Bethea admitted to "holding [Mr. Morris] at bay, trying to get him to go ahead, . . . almost begging him to go . . . [b]ecause [he] knew the kids were going to get crazy out there." (Id. at 58.) But he testified that he "pulled away" when the swinging began because he "wasn't going to get in the middle of it." (Id.) After the stabbing, Mr. Bethea "just stood there for a second. [Mr. Morris] walked away [toward the gas station]. Everyone ran," and Mr. Bethea then walked away toward his house. (Id. at 62.) He stopped at the driveway upon Officer Vongkeo's command.

As to the obstruction charges, Mr. Bethea admitted that he created a list of what he wanted witnesses to say on his behalf, explaining:

> Well, I did it in a way whereas they could see some things. Somebody, say Tangie, might have saw the officer ask Tony, who done this to you. And Tony said he did not know. Tony was high, and he didn't know whose the voice was. I could have seen Tony. Big Tony might have saw the police in the back yard for about a hour or two looking for something with a flashlight, because they didn't take me directly away. They -- I sat there -- well, actually, I stood by the car for a long time, then I sat in the car. And that was one thing. And so it's just some different points in time that one or all might have seen that I wanted somebody to pinpoint,
>
> come to court and say, look, this is what happened, corroborate my story that I've told since day one.

(Id. at 67.) Mr. Bethea testified that the $40 was a reference to the court's witness voucher, the amount of which was corroborated by the testimony of the Superior Court's Chief Financial

5

Officer.

On May 25, 2010, the jury convicted Mr. Bethea of two counts of obstructing justice and one count of assault with significant injury. The jury acquitted Mr. Bethea of carrying a dangerous weapon and the remaining obstruction count. The following day, after further deliberation on the remaining counts, the jury convicted Mr. Bethea of assault with a dangerous weapon and aggravated assault while armed. The jury acquitted Mr. Bethea of assault with intent to kill while armed but convicted him of the lesser-included charge of assault with a dangerous weapon; it also acquitted him of malicious disfigurement while armed but convicted him of the lesser-included charge of assault with a dangerous weapon.

Mr. Bethea was sentenced on October 19, 2010, and he noted his appeal. In June 2011, appellate counsel Joanne Vasco wrote a letter to Mr. Bethea after having reviewed the transcripts and read "all of [Mr. Bethea's] letters raising certain issues." Vasco Jun. 7, 2011 Letter at 1 [Dkt. # 1-2 pp. 41-44; Dkt. # 24-4 pp. 34-37]. Ms. Vasco explained why she would not file a motion for collateral relief under D.C. Code § 23-110, and she informed Mr. Bethea about the procedures for him to pursue that relief *pro se*.[1] Ms. Vasco listed the issues she "intend[ed]" to brief as: "denial of the motion for a new trial, eyewitness ID, DJ as witness, and issues surrounding the conviction for aggravated assault and perhaps the denial of the MJOA for obstruction." *Id*. at 3.

In actuality, Ms. Vasco argued (1) that the trial court abused its discretion in denying Mr. Bethea's motion for a new trial; (2) that the trial court erred in failing to instruct the jury on self-defense; and (3) that the two convictions for assault with a dangerous weapon

---

[1]  Mr. Bethea unsuccessfully pursued relief under D.C. Code § 23-110. *See Bethea v. United States*, No. 13-CO-26 (D.C. Dec. 23. 2013) [Dkt. 24-9].

(ADW) merged.  *See* Gov't Ex. B [Dkt. # 24-2] (*Bethea v. United States*, No. 10-CF-1447 (D.C. Mar. 2, 2012).  The D.C. Court of Appeals (DCCA) affirmed the trial court's judgment, but it remanded the case with instructions to vacate one of the ADW convictions.  On April 17, 2012, Mr. Bethea filed in the DCCA a motion to recall the mandate "based on ineffective assistance of appellate counsel."  Gov't Ex. D [Dkt. # 24-4].  The DCCA denied the motion on March 20, 2013, in a per curiam decision that reads as follows:

> On consideration of appellant's motion to recall the mandate, it is
>
> ORDERED that appellant's motion to recall the mandate is denied. Appellate counsel considered the claims appellant sought to raise via a D.C. Code § 23-110 motion and after finding no merit sought an extension of time and appellant filed for relief *pro se.* Appellate counsel is not required to file for such relief and in this instance, appellate counsel satisfied her duty under *Pearsall v. United States,* 859 A.2d 634, 640 (D.C. 2004), *Doe v. United States,* 583 A.2d 670, 674 (D.C. 1990), and *Shepard v. United States,* 533 A.2d 1278 (D.C. 1987). Moreover, appellate counsel considered the issues appellant sought to raise in his direct appeal and made a tactical decision not to pursue those claims. Because appellant has not demonstrated prejudice, the decision of counsel does not constitute ineffective assistance on appeal. *See Rose v. United States,* 629 A.2d 526, 535 (D.C. 1993) (stating "it is interesting to note that in deciding claims of ineffective assistance of counsel on appeal, we do not hold defense counsel accountable for failing to make every conceivable argument that the appellant wants to make; we evaluate performance, to a considerable extent, by deference to counsel's judgment about the relative merits of arguments and about the best tactical approach to take").

Gov't Ex. F [Dkt. # 24-6].  Mr. Bethea timely filed the instant § 2254 petition on December 19, 2013.

## II. LEGAL STANDARDS

### A. Writ of Habeas Corpus

"A . . . judge entertaining an application for a writ of habeas corpus shall forthwith award the writ . . ., unless it appears from the application that the applicant . . . is not entitled thereto."  28 U.S.C. § 2243.  As a general rule, District of Columbia prisoners, such as Mr. Bethea, are foreclosed from federal court review of their convictions by D.C. Code § 23-110,

7

which provides a post-conviction remedy for D.C. prisoners that "is comparable to" the remedy under 28 U.S.C. § 2255 for federal prisoners. *Swain v. Pressley*, 430 U.S. 372, 375 (1977). The exception is where the local remedy is shown to be inadequate or ineffective. The Court of Appeals has determined that § 23-110 does not bar a habeas petition challenging the effectiveness of appellate counsel "because the Superior Court lacks authority to entertain a section 23-110 motion challenging the effectiveness of appellate counsel." *Williams v. Martinez*, 586 F.3d 995, 999 (D.C. Cir. 2009). Thus, "D.C. prisoners who challenge the effectiveness of appellate counsel through a motion to recall the mandate in the D.C. Court of Appeals will get a second bite at the apple in federal court." *Id*. at 1000. Mr. Bethea has satisfied the exhaustion requirement. Therefore, his claim of ineffective assistance of appellate counsel may proceed in this Court under "the standard set forth in 28 U.S.C. § 2254." *Id*. at 1002.

> Pursuant to § 2254,
>
> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). In proceedings under this provision, the state court's factual determinations are "presumed to be correct," and it is the petitioner's burden to rebut "the presumption of correctness by clear and convincing evidence." § 2254(e)(1). In order to succeed, a petitioner must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, --- U.S. ---, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v.*

8

*Richter*, 562 U.S. ---, ---, 131 S.Ct. 770, 786-787 (2011) (internal quotation marks omitted)). Admittedly, this standard "erects a formidable barrier to federal habeas relief for prisoners [such as Mr. Bethea] whose claims have been adjudicated in state court." *Id*.

## B. Ineffective Assistance of Appellate Counsel

The Sixth Amendment to the Constitution provides to criminal defendants the right of effective assistance of counsel at trial and on direct appeal. In assessing appellate counsel's performance, the Court applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). S*mith v. Robbins*, 528 U.S. 259, 285 (2000). To establish appellate counsel's ineffectiveness, Mr. Bethea must show that counsel's performance was (1) so deficient that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) prejudicial, *i.e*., that there was "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *accord United States v. Solofa*, 745 F.3d 1226, 1229 (D.C. Cir. 2014). A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome" of the appeal. *Strickland*, 466 U.S. at 669. "A court does not have to address both components of the inquiry if the petitioner makes an insufficient showing on one of them." *Graham v. Bledsoe*, 841 F. Supp. 2d 134, 138 (D.D.C. 2012).

The court's analysis begins with "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. As applicable here, "counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal," *Smith v. Robbins*, 528 U.S. 259, 288 (2000), and when "counsel focuses on some issues to the exclusion of others, there is a strong presumption that [s]he did so for

9

tactical reasons rather than through sheer neglect," *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citation omitted).

### III. ANALYSIS

The gravamen of Mr. Bethea's claim is that "after a year of going back and forth with his appellate attorney on what preserved issues to file in his appeals brief, [his] attorney simply ignored petitioner's requested issue and unbeknownst to petitioner, filed a frivolous bare bones brief." Pet'r Reply at 16 [Dkt. # 17]. The fact that the appeal resulted in the vacation of one of Mr. Bethea's convictions belies his claim that Ms. Vasco's brief was frivolous.

Mr. Bethea claims also that following his resentencing, he "prepared a competent appellate brief raising the very issues he raises now." *Id*. at 17. But the DCCA limited that review to "allegations pertinent to [Mr. Bethea's] resentencing." DCCA's Am. J. [Dkt. # 24-5]. The DCCA informed Mr. Bethea that "[a]ny alleged deficiencies of appellate counsel must be presented to this court by a motion to recall the mandate." *Id*. Mr. Bethea pursued that course of action, albeit unsuccessfully.

Mr. Bethea faults Ms. Vasco for failing to advance the following arguments:

1) The trial court abused its discretion when it ordered the jury to continue deliberating on the assault counts after it had acquitted Mr. Bethea of the weapons count.

2) Reversible error occurred when the trial court denied Mr. Bethea's *Batson* challenge "based on age, sex, and race discrimination in violation of D.C. Code § 11-1910(c), and the Constitution of the State of New Columbia, Article 1, § 3" (Pl.'s Reply at 36).[2]

---

2   Mr. Bethea's prolix reply brief is replete with allegations of trial error that this Court has no authority to decide and, thus, will not address. *See Waters v. Lockett*, 956 F. Supp. 2d 109, 112 (D.D.C. 2013) (explaining that this Court's jurisdiction to review the convictions of a District of Columbia prisoner "is limited to 'those claims that could [not] have been raised through section

10

    3) Reversible error occurred when the trial court denied Mr. Bethea's motion for judgment of acquittal on the aggravated assault while armed count and the lesser included offenses.

    4) Reversible error occurred when the trial court denied Mr. Bethea's motion for judgment of acquittal on the obstruction of justice charges.

    5) The trial court abused its discretion when it permitted "the weapon to go back into the deliberation[] room as evidence, and or, an element after jeopardy had terminated" (Pl.'s Reply at 55).

    6) The trial court abused its discretion when it denied "a continuance to secure two defense witnesses[,] one of which was under a lawful subpoena" (Pl.'s Reply at 61).

The record shows that Ms. Vasco decided against raising the preserved *Batson* challenge because the trial judge had "meticulously examined" the issue and found from all the relevant circumstances that Mr. Bethea had not shown purposeful discrimination. Vasco Letter at 3; *see* Gov't Opp'n at 30-32. Moreover, in denying Mr. Bethea's recall motion raising substantially the same failures, the DCCA concluded that Mr. Bethea had not demonstrated prejudice resulting from Ms. Vasco's "tactical decision not to pursue [his proposed] claims." *Bethea v. United States*, No. 10-CF-1447 (D.C. Mar. 20, 2013) [Dkt. # 12-6; 24-6].

When, as here, "a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief [only] if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough*, 540 U.S. at 4 (quoting 28 U.S.C. § 2254(d)(1)). The

---

23–110' of the D.C. Code," such as ineffective assistance of appellate counsel) (quoting *Williams v. Martinez*, 586 F.3d 995, 999 (D.C. Cir. 2009)) (other citation omitted; alteration in original); *Saunders v. United States*, 72 F. Supp. 3d 105, 108-09 (D.D.C. 2014) (listing types of "alleged trial errors [that] could have been raised in the Superior Court by motion under § 23-110").

DCCA's rejection of Mr. Bethea's claim on the prejudice requirement was neither contrary to *Strickland* nor unreasonable.  This is because the guilty verdicts turned on whose version of the events the jury believed.  As the DCCA correctly observed years before Mr. Bethea's appeal, when " 'there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous,' " nor can it be the ground for overturning a jury's verdict.  *Hart v. U.S.*, 863 A.2d 866, 873 (D.C. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

The record shows that the jury had substantial evidence to convict Mr. Bethea.  The testimony of Mr. Morris, Ms. Swinson, Mr. Bethea himself, the medical professionals, and the MPD officers, and the corroborating DNA test results to which Mr. Bethea stipulated, provided overwhelming evidence for the jury to disbelieve Mr. Bethea's theory of the case and find that it was Mr. Bethea, not a group of teenagers, who had attacked Mr. Morris and caused substantial injury to his face.  Moreover, the DCCA noted in the direct appeal that "[t]he trial court found that the evidence against Mr. Bethea was overwhelming, so [his purported newly discovered evidence] would probably have not produced an acquittal."  *Bethea*, No. 10-CF-1447 at 4, n.5.  In the unlikely event that Ms. Vasco's performance could be found deficient, there is no likelihood that the outcome of the direct appeal would have been different.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the DCCA, consistent with *Strickland v. Washington*, reasonably rejected Mr. Bethea's appellate counsel ineffectiveness claim upon determining that none of the proposed issues Ms. Vasco decided against raising would have changed the outcome of Mr. Bethea's direct appeal.  Accordingly, the habeas

petition is denied. A separate Order accompanies this Memorandum Opinion.


Date:  January 11, 2016                             _____/s/_____
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge